# MATTER OF CERNA

## In Deportation Proceedings

## A-30257519

### *Decided by Board October 7, 1991*

(1) An applicant for relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1988), must be a lawful permanent resident of the United States and must have a lawful unrelinquished domicile of 7 consecutive years.

(2) Barring a subsequent reversal of a respondent's deportability finding by an appellate court or administratively, an alien's status as a lawful permanent alien ends upon the entry of an administratively final order of deportation.

(3) A respondent who is subject to an administratively final order of deportation cannot successfully move to reopen deportation proceedings to again apply for relief under section 212(c) of the Act as such a respondent is no longer a lawful permanent resident of this country.

(4) Authority from one circuit is not binding in another and the Board declines to follow the holding in *Vargas v. INS*, 938 F.2d 358 (2d Cir. 1991), outside the jurisdiction of the United States Court of Appeals for the Second Circuit.

(5) Motions to reopen and motions to reconsider are separate and distinct motions with different requirements—a motion to reconsider requests that the original decision be reexamined in light of additional legal arguments, a change of law, or an argument or aspect of the case that was overlooked, while a motion to reopen seeks to reopen proceedings so that new evidence can be presented and a new decision entered on a different factual record, normally after a further evidentiary hearing.

(6) The Board of Immigration Appeals has not held that a respondent who has been denied relief under section 212(c) of the Act is precluded from having the original decision reconsidered.

(7) The Board is not favorably disposed to the practice of waiting until the conclusion of the administrative appeal process to file a motion that seeks to offer additional evidence regarding the matter previously in issue.

(8) The Board has not held that the existence of outstanding equities creates a right to have the consequences resulting from particularly serious criminal misconduct waived or that such equities compel a grant of discretionary relief; rather, the Board has noted just the opposite (i.e., that the nature of the adverse factor or factors may ultimately be determinative of whether relief under section 212(c) of the Act is granted).

CHARGE:

Order: Act of 1952—Sec. 241(a)(11) [8 U.S.C. § 1251(a)(11)]—Convicted of controlled substance violation

ON BEHALF OF RESPONDENT: Helena Tetzeli, Esquire
2650 S.W. 27th Avenue, 2nd Floor
Miami, Florida 33133

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated March 25, 1987, an immigration judge found the respondent deportable as charged and denied his application for relief from deportation pursuant to section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1982), in the exercise of discretion. The respondent, who had conceded his deportability, appealed solely from the denial of his request for relief under section 212(c). The respondent's appeal was dismissed by this Board on July 26, 1990. On January 23, 1991, the respondent, through new counsel, filed a "Motion to Reconsider and/or Reopen and Remand." The motion will be denied.

We note initially that although styled as both a motion to reconsider and a motion to reopen, the motion before us is, in fact, solely a motion to reopen deportation proceedings. The motion seeks the opportunity to submit evidence that was not previously a matter of record and seeks a further opportunity to pursue a request for relief under section 212(c) of the Act on the supplemented record. There is no argument presented that alleges any specific error in our prior decision in this case. In any event, even if the respondent's submission is viewed in part as a motion to reconsider, we decline to reconsider our July 26, 1990, decision as we find nothing in the motion that would cause us to reevaluate that decision on the factual record that was then before us.

As noted, the respondent is seeking to have his deportation proceedings reopened so that he can present what he submits is new evidence and again pursue an application for relief under section 212(c) of the Act. However, the respondent cannot successfully move to reopen proceedings to again apply for relief under section 212(c) as he can no longer establish prima facie eligibility for such relief. An applicant for relief under section 212(c) of the Act must be a lawful permanent resident of the United States and must have a lawful unrelinquished domicile of 7 consecutive years. *See* section 212(c) of the Act; *Gonzales v. INS*, 921 F.2d 236, 238 (9th Cir. 1990). This respondent is no longer a lawful permanent resident of this country as his status as such ended upon the entry of the final administrative order of deportation by this Board. *See* section 101(a)(20) of the Act, 8 U.S.C. § 1101(a)(20) (1988); *Rivera v. INS*, 810 F.2d 540 (5th Cir. 1987); *Matter of Lok*, 18 I&N Dec. 101 (BIA 1981), *aff'd on other*

*grounds*, 681 F.2d 107 (2d Cir. 1982); *see also* 8 C.F.R. §§ 3.1(d)(2), 3.37, 242.20, 243.1 (1991). For the reasons we enunciated in *Matter of Lok, supra*, barring a reversal on the merits of the respondent's deportability finding by an appellate court or administratively, the respondent lost his status as a lawful permanent resident on July 26, 1990.[1] Thus, he is no longer statutorily eligible for relief under section 212(c). *Gonzales v. INS, supra.* Accordingly, the respondent's motion to reopen and remand will be denied.

We note that the United States Court of Appeals for the Second Circuit recently found a decision of this Board denying reopening of deportation proceedings for this same reason to be "arbitrary and capricious." *Vargas v. INS*, 938 F.2d 358, 361-63 (2d Cir. 1991). The Second Circuit, in reversing our decision and in disagreeing with the Ninth Circuit's analysis in *Gonzales v. INS, supra,* concluded that a respondent's eligibility for section 212(c) relief, once established, survives a finding of deportability. The court ruled that, even if a respondent no longer is a lawful permanent resident of the United States, he can successfully move to reopen proceedings to again apply for relief under section 212(c) so long as his eligibility for such relief had once been established. Authority from one circuit is not binding in another, however, and we respectfully decline to follow the holding in *Vargas v. INS* outside the jurisdiction of the Second Circuit for the following reasons. *See State of Ga. Dep't of Medical Assist. v. Bowen,* 846 F.2d 708, 710 (11th Cir. 1988).

As regards *Vargas v. INS, supra,* we note that the basis for our conclusion in that case, that a respondent who has lost his lawful permanent resident status is not eligible to have deportation proceedings reopened to again apply for relief under section 212(c), was not, as stated by the court, simply supported by one "phrase" in *Matter of Lok, supra. Vargas v. INS, supra,* at 360. We also would not agree that we "did not present [our] decision [in *Vargas*] as an interpretation of statutory provisions." *Id.* at 363. Our decision in that case was based (as is our decision today) on the rationale we set forth in *Matter of Lok,* which in turn was founded on our interpretation of sections 101(a)(20) and 212(c) of the Act.

Moreover, contrary to the holding in *Vargas v. INS,* our conclusions in this regard do not result in an "[i]mplicit [a]mendment" of the

[1] We would also deem the respondent's lawful domicile in this country to have ended on the same date that his status as a lawful permanent resident ended. *See* Appendix. However, the precedent decisions of the United States Court of Appeals for the Eleventh Circuit that are controlling in this case hold that the respondent's lawful domicile ended with the issuance of the Order to Show Cause and Notice of Hearing (Form I-221). *Ballbe v. INS,* 886 F.2d 306 (11th Cir. 1989), *cert. denied,* 495 U.S. 929 (1990); *Marti-Xiques v. INS,* 741 F.2d 350 (11th Cir. 1984).

regulatory provisions regarding motions to reopen set forth in 8 C.F.R. §§ 3.2 and 3.8 (1991). *Vargas v. INS, supra,* at 361. First, the regulations certainly do not create an express right to have proceedings considered for reopening in order to further pursue applications for relief under section 212(c) of the Act. In fact, as the Supreme Court noted in *INS v. Jong Ha Wang,* 450 U.S. 139 (1981), "The present regulation is framed negatively; it directs the Board not to reopen unless certain showings are made. It does not affirmatively require the Board to reopen proceedings under any particular condition." *Id.* at 144 n.5. Moreover, the controlling regulations are not "effectively amend[ed]" in this context—or in any other—by the application of the rule that a motion to reopen deportation proceedings to apply for relief will be denied in the absence of a showing of prima facie eligibility for the relief in question. *Vargas v. INS, supra,* at 361.

Further, in *Vargas v. INS,* the court stated that our "application of the *Lok* rule to motions to *reconsider* Section 212(c) relief has been erratic. *Id.* at 362. (Emphasis added.)" The court also stated that a "motion to reopen or to reconsider is not a request for a *new* decision. Rather, it permits a decisionmaker to reevaluate the original decision." *Id.* In our view, both of these statements inappropriately entwine motions to reopen and motions to reconsider, which "are two separate and distinct motions with different requirements." *Chudshevid v. INS,* 641 F.2d 780, 783 (9th Cir. 1981); *see also Sanchez v. INS,* 707 F.2d 1523, 1529 (D.C. Cir. 1983). We have never held that a respondent who has been denied relief under section 212(c) is precluded from having the original decision *reconsidered.* A motion to reconsider asserts that at the time of the Board's previous decision an error was made. It "questions the Board's decision for alleged errors in appraising the facts and the law." 1 C. Gordon & S. Mailman, *Immigration Law and Procedure* § 3.05[7][a], at 3-61 (rev. ed. 1991). When we reconsider a decision, we are in effect placing ourselves back in time and considering the case as though a decision in the case on the record before us had never been entered. If the respondent was eligible for relief at the time the original decision was entered, then in reconsidering the decision we would treat his status as that which it had been at the time of the initial decision. The very nature of a motion to reconsider is that the original decision was defective in some regard. A motion to reopen proceedings, however, is a fundamentally different motion.[2] *See Sanchez v. INS, supra; Chudshevid v. INS, supra.*

---

[2] A motion to reconsider "is a request that the Board reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked, while [a] motion to reopen is usually based upon new evidence or a change in factual circumstances." Hurwitz, *Motions Practice Before the Board of Immigration Appeals,* 20 San Diego L. Rev. 79, 90 (1982) (footnotes omitted).

It does not contest the correctness of (or simply request a reevaluation of) the prior decision on the previous factual record. Rather, a motion to reopen proceedings seeks to reopen proceedings so that new evidence can be presented and so that a new decision can be entered, normally after a further evidentiary hearing. We find nothing either inconsistent or illogical in holding that a respondent can move for reconsideration of a decision, which was entered while he was a lawful permanent resident and which denied relief under section 212(c), based on an argument that that decision was incorrectly entered, while a respondent who has lost his status as a lawful permanent resident cannot thereafter successfully move to reopen proceedings to have a different application for relief under section 212(c) adjudicated on a different factual record. Rather, we would find it inconsistent to conclude that an alien who is no longer a lawful permanent resident of the United States could have proceedings reopened to apply for relief only available to lawful permanent residents.

Finally, as regards *Vargas v. INS, supra*, to our knowledge, we have not been "erratic" in our application of the "*Lok* rule" to motions to reopen proceedings to apply for section 212(c) relief. *Id.* at 362. In view of the sheer number of decisions we enter and the difficulty, as a practical matter, of attempting to review every post-*Lok* Board decision involving a motion to reopen proceedings to further pursue an application for relief under section 212(c), we would be hesitant to state that we have never granted a motion to reopen proceedings in such circumstances, just as we would not state that we have never entered an erroneous decision in any other context. The fact that such decisions occur is the reason that provisions for reconsideration exist. We are not aware of any such decisions, however, and note that none was identified in *Vargas v. INS*.

Even were we to apply the Second Circuit's rationale to this case, we would deny the respondent's motion. We note initially that we are not favorably disposed to the practice of waiting until the conclusion of the administrative appeal process to file a motion that seeks to offer additional evidence regarding the matter previously in issue. Here, as regards the most significant of the respondent's new equities, we note that his marriage to a United States citizen occurred less than 1 month after the filing of his appeal from the adverse decision of the immigration judge issued on March 25, 1987, and his United States citizen child was born in November 1987. There is no explanation provided for the failure to submit a motion proffering this additional evidence while the respondent's administrative appeal was pending.

In any event, wholly aside from its timing, and considering both the previous record and the new matters regarding the respondent's familial and community ties, his business venture, his property ties,

and his completion of parole, we still would not grant this motion in the exercise of discretion. We are particularly sympathetic to the hardship that the respondent's deportation may cause his 4-year-old child and his United States citizen wife (although the significance of the marriage and the possible hardship to the respondent's wife is somewhat diminished by the fact that the marriage occurred after the respondent had been found deportable and his request for discretionary relief had already been denied by the immigration judge). The respondent does have outstanding equities, as is often the case with applicants for relief under section 212(c) of the Act. In describing how we exercise our discretion, we have stated that, absent outstanding or unusual equities, relief under section 212(c) *will* be denied in the exercise of discretion in cases where there are particularly adverse factors present. *Matter of Edwards*, 20 I&N Dec. 191 (BIA 1990). However, we have never held that the existence of such equities creates a right to have the consequences resulting from serious criminal misconduct waived. Nor do such equities compel a grant of discretionary relief. Rather, we have noted just the opposite (i.e., that the nature of the adverse factor or factors may ultimately be determinative of whether relief under section 212(c) is granted). *See Matter of Buscemi*, 19 I&N Dec. 628, 634 (BIA 1988); *Matter of Marin*, 16 I&N Dec. 581, 584-85 (BIA 1978). There are drug offenses of varying degrees of seriousness and in our view this respondent was convicted of a particularly serious drug trafficking offense. His 1984 conviction resulted from his purchase and importation into the United States of half a kilogram of cocaine. He personally bought the cocaine in Bolivia and had his shoes modified to conceal the drugs in order to smuggle them into this country. Moreover, the immigration judge found the respondent's credibility lacking in his testimony regarding the particulars of this crime and regarding his previous criminal record.[3] The respondent can have been under no illusion of the seriousness with

---

[3] The respondent testified that he had been convicted of possession of marihuana in 1975 and that he pled guilty to a charge of carrying a concealed weapon in 1974 or 1975. As regards this latter matter, he testified as follows: He was driving his mother's car and a friend, who had a gun, "went inside a car to ... to get some tapes that belonged to him or something like that." They were both arrested. His friend was found not guilty, but the respondent was charged with carrying a concealed weapon because the weapon was in his car. He pled guilty because he knew that he was going to get probation and he wanted to avoid "wasting more time and money" by going to trial. The record indicates that he was adjudicated guilty of possession of marihuana on July 7, 1975, and received a suspended sentence. Some 6 months later, he was placed on probation for carrying a concealed weapon, carrying a firearm without a license, and breaking and entering an automobile. The adjudication of guilt was withheld in this latter case, leaving the respondent without a conviction under Florida law, and his probation was terminated on October 18, 1977.

which drug trafficking is viewed. While drug trafficking crimes of this nature are not unique in the gravity with which we view them, there are few adverse matters we view as more serious. We have never held—and certainly do not hold today—that there are no circumstances under which we might grant relief in the face of adverse matters of the nature present in this case. However, even considering the additional factors asserted in this motion, the case before us is simply not one in which we are satisfied that a favorable exercise of our discretion is warranted. The responsibility for the hardships and difficulties that this respondent and his family may face rest squarely on the respondent's shoulders.

Accordingly, the respondent's "Motion to Reconsider and/or Reopen and Remand" will be denied in the exercise of discretion as well as on grounds of statutory eligibility.

**ORDER:** The respondent's motion to reopen and reconsider is denied.

## APPENDIX

We note that a principal mission of the Board of Immigration Appeals is to ensure as uniform an interpretation and application of this country's immigration laws as is possible. At times achieving this goal is beyond our control as our decisions are reviewable in federal court and we ordinarily apply the law of a circuit to the cases that arise within that circuit. We certainly acknowledge the benefit to the adjudication process of having our decisions thus reviewable, particularly in view of the profound nature of the rights often at issue in the cases we review. Moreover, assistance in achieving some measure of uniformity is provided by the "great deference" a court ordinarily must accord our interpretation of the governing statute. *Udall v. Tallman*, 380 U.S. 1, 16 (1965); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 447-48 (1987); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984). In this context, however, the history subsequent to our decision in *Matter of Lok*, 18 I&N Dec. 101 (BIA 1981), was rather disheartening.

We recognized in *Matter of Lok* what, in our view, is the inextricable relationship between the issue of when lawful permanent resident status terminates and when lawful unrelinquished domicile ends for section 212(c) purposes (i.e., it would seem to make little sense to conclude that an alien's lawful domicile has ended prior to the point at which he loses his status as a "lawful permanent resident," just as it would seem to make little sense to conclude that lawful domicile continues beyond the point that a final order of deportation has been entered). We recognized that arguments could be made in the deportation context as to various stages at which an alien's status as a

405

lawful permanent resident could be considered to have "changed" within the meaning of section 101(a)(20) of the Act. For reasons we articulated in *Matter of Lok*, and which we will not reiterate here, we concluded that the most appropriate rule was that an alien's status as a lawful permanent resident ends with an administratively final order of deportation, barring a subsequent reversal on the merits of the finding of deportability by a court or administratively as a result of a motion. Our interpretation of the law established a rather straightforward test in an area of the law which is particularly contorted, even in the context of an Immigration and Nationality Act that in simpler times was characterized as a "never-never land ... where plain words do not always mean what they say." *Yuen Sang Low v. Attorney General*, 479 F.2d 820, 821 (9th Cir.), *cert. denied*, 414 U.S. 1039 (1973).

Subsequent to our decision in *Lok*, various courts of appeals considered the issues we addressed therein (although not always addressing the relationship between the issue of when an alien loses his lawful permanent resident status and when his lawful unrelinquished domicile ends). We recognize that our perspective may be somewhat colored, as it was our decisions under review, but we are not left with the sense in many instances that deference, substantial or otherwise, was accorded our interpretation of the relevant laws and regulations.

Initially, the Second Circuit, in reviewing our decision in the *Lok* case itself, noted its view that the respondent's lawful domicile may have ended "even earlier" than the point specified in our decision (i.e., it "probably" ended when the respondent conceded deportability and "no appeal was taken challenging the finding of deportability"). *Lok v. INS*, 681 F.2d 107, 110 (2d Cir. 1982).[1] The premise underlying this conclusion was that the respondent's order of deportability had "probably" become final at that point. We note, however, that— contrary to this premise—the immigration judge's order of deportability had *not* become administratively final, as the respondent did appeal from the immigration judge's decision. Under the controlling regulations then in effect, if an immigration judge's "order" was appealed, it was not final. 8 C.F.R. § 242.20 (1982). The "order" that

---

[1] Thus, in some respects, the Second Circuit takes a more restrictive interpretation of the laws in this area than do we, while in others, the court takes a far more expansive interpretation. That is, it would appear that the Second Circuit would cut off a lawful permanent resident's ability to initially establish eligibility for relief under section 212(c) at an earlier point than we would. However, if eligibility has once been established, the court would recognize no finality (other than the "physical deportation" of the alien from the United States) to an alien's right to seek reopening of deportation proceedings to further pursue an application for such relief even beyond the point that a loss of lawful permanent resident status clearly has occurred. *See Vargas v. INS*, 938 F.2d 358, 363 (2d Cir. 1991).

was referred to was "the order" in its entirety, not simply the specific aspect of the order that was challenged on appeal. *See* 8 C.F.R. § 242.18(a), (c) (1982); *see also* 8 C.F.R. §§ 3.1(d)(2); 3.37; 242.20 (1991) (which make clear that it is "the decision" that either is or is not final, rather than its individual components).

Thereafter, the Eleventh Circuit in its first decision in *Marti-Xiques v. INS*, 713 F.2d 1511 (11th Cir. 1983), concluded that a respondent's lawful domicile did not terminate when we rendered a decision dismissing the respondent's appeal from an immigration judge's denial of discretionary relief because the respondent's presence could not be deemed unlawful until the administrative denial of discretionary relief was upheld on appeal. This decision was in turn followed by the Ninth Circuit's decision in *Wall v. INS*, 722 F.2d 1442 (9th Cir. 1984), in which it was held that the respondent's lawful domicile continued pending judicial consideration of his petition for review, but only because that petition challenged the respondent's deportability finding. The Ninth Circuit did not find it determinative whether or not the challenge to the administrative finding of deportability was ultimately successful. Next, on rehearing, the Eleventh Circuit vacated its prior decision in *Marti-Xiques* and held that the date that the Order to Show Cause and Notice of Hearing (Form I-221) is issued is the appropriate point at which to conclude that eligibility for section 212(c) relief is determined. *Marti-Xiques v. INS*, 741 F.2d 350 (11th Cir. 1984). This decision did not specifically address the issue of whether a respondent is deemed to have lost his status as a lawful permanent resident by the mere issuance of the Order to Show Cause or, whether such status is not lost at that point, but lawful domicile ends nonetheless. The Ninth Circuit then held in *Avila-Murrieta v. INS*, 762 F.2d 733 (9th Cir. 1985), that when "an alien concedes his deportability or fails to raise a challenge to an order of deportation, he may no longer be said to harbor a 'lawful intent' to remain in this country even if the INS fails to take immediate steps to expel him beyond our borders." *Id.* at 736. The court did not find it necessary to determine if one's "lawful intent" terminates when proceedings commence or when the deportation order becomes final. *Id.*

The Fifth Circuit was the next to consider the issues raised in *Matter of Lok*. The Fifth Circuit initially ruled that an alien against whom a final administrative order had been entered was nonetheless entitled to claim his lawful permanent resident status for the purpose of filing a motion to reopen deportation proceedings to apply for relief under section 212(c) based in part on its conclusion that the Board decision in *Matter of Lok* would create a "Catch-22" and "essentially make[] the discretionary relief provided by section 212(c) unavailable in the deportation context." *Rivera v. INS*, 791 F.2d 1202, 1205 (5th

Cir. 1986). On reconsideration, however, the Fifth Circuit concluded that our decision in *Lok* was entitled to "great deference" and that our conclusion in that case was a "sensible one." *Rivera v. INS*, 810 F.2d 540, 542 (5th Cir. 1987). In its 1987 decision, the Fifth Circuit noted that the *Lok* rationale did not create the "Catch-22" that it had been concerned about in its initial decision. *Id.* at 541. Finally, in 1989, the Eleventh Circuit reaffirmed its position that the date for determining whether an alien has maintained his lawful domicile for section 212(c) purposes is the date of issuance of the Order to Show Cause. *Ballbe v. INS*, 886 F.2d 306 (11th Cir. 1989), *cert. denied*, 495 U.S. 929 (1990).

Thus, depending upon where a case arises, the point at which a respondent must establish his eligibility for section 212(c) relief can be as early as the date of issuance of the Order to Show Cause (which may be long before the Immigration and Naturalization Service actually commences deportation proceedings by the filing of the Order to Show Cause with the Office of the Immigration Judge) or as late as the date of a circuit court's dismissal of a petition for review, if that petition involves an issue of deportability.

If nothing else is clear, we believe this succession of decisions reflects the accuracy of our original view expressed in *Matter of Lok*, *supra*, in 1981 that there are "various stages within the deportation process at which the status of an alien 'lawfully admitted for permanent residence' may be considered to have changed within the meaning of section 101(a)(20) of the Act." *Id.* at 105. We also believe that these decisions, considered together, reflect that this is not an issue in which there is an obviously correct or incorrect answer. Perhaps we should take some solace in the fact that at least one circuit views our analysis in *Matter of Lok* as sensible. And, we note that the diversity of opinions here does not create any unmanageable burden on the adjudication process itself—we simply must assure that the right test is applied in the right circuit. At times that can pose a difficulty as a petition for review is not always filed in the same circuit in which the deportation proceeding was held, but this certainly is not a unique circumstance. Situations like this, however, do create a very real problem. The laws that we administer and the cases we adjudicate often affect individuals in the most fundamental ways. We think that all would agree that to the greatest extent possible our immigration laws should be applied in a uniform manner nationwide, particularly where the most significant aspects of the law are in issue. Here, however, we are left with a patchwork application of the law—with the most profound decisions affecting aliens (all of whom in this context have been lawful permanent residents of the United States) tied to the mere happenstance of where their cases arise geographically.