**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

REYNALDO PLASENCIA-AYALA,

*Petitioner,*

v.

MICHAEL B. MUKASEY,\* Attorney
General,

*Respondent.*

No. 06-73728

Agency No.
A91-966-521

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 3, 2007—San Francisco, California

Filed February 7, 2008

Before: Jerome Farris, Robert R. Beezer, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Thomas

---

\*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**COUNSEL**

Bryan M. Westhoff, LeBoeuf, Lamb, Greene & Macrae, Chicago, Illinois, argued the cause for the petitioner; William J.T. Brown, LeBoeuf, Lamb, Greene & Macrae, New York, New York, was on the brief.

Liza S. Murcia, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., argued the cause for the respondent; Peter D. Keisler, Assistant Attorney General, Civil Division, and David V. Bernal, Assistant Director, United States Department of Justice, Washington, D.C., were on the brief.

**OPINION**

THOMAS, Circuit Judge:

This case presents the question of whether failing to register as a sex offender in violation of Nev. Rev. Stat. § 179D.550 is a crime involving moral turpitude within the meaning of 8 U.S.C. § 1182(a)(2)(A)(i)(I). We conclude that it is not, and grant the petition for review from the contrary decision of the Board of Immigration Appeals ("BIA").

I

A

Reynaldo Plasencia-Ayala is a native and citizen of Mexico. He was born on May 18, 1968 and first came to the Unites States in 1986 at the age of eighteen. On December 1,

1990, Plasencia-Ayala was admitted for permanent residence in Chicago, Illinois.

Plasencia-Ayala has two criminal convictions relevant to this appeal. On June 4, 2002, Mr. Plasencia-Ayala pled guilty to the offense of open or gross lewdness, in violation of Nev. Rev. Stat. § 201.210, a "gross misdemeanor." Plasencia-Ayala was sentenced to a term of nine months in Washoe County Jail, and ordered to pay fees and costs.

The open or gross lewdness conviction is considered a sexual offense under Nevada law. Nev. Rev. Stat. § 179D.410(11). As a convicted sexual offender, Plasencia-Ayala is required to register with the local law enforcement agency within 48 hours of being present in any Nevada county or city. Nev. Rev. Stat. § 179D.460(1-3). Although the burden is on the sexual offender to register, Nevada has adopted a variety of procedures to ensure that offenders initially register and are informed of their registration responsibilities.[1] Nevada law provides that following the imposition of a sentence for a sexual offense, the court shall "[i]nform the defendant of the requirements for registration" and "[r]equire the defendant to read and sign a form stating that the requirements for registration have been explained to him." Nev. Rev. Stat. § 176.0927(1)(b)-(c). The court is also required to notify the "Central Repository" of the conviction, which in turn must "notify the local law enforcement agency so that a record of registration may be established." Nev. Rev. Stat. §§ 176.0927(1)(a), 179D.450(1). Additionally, for offenders like Plasencia-Ayala who are incarcerated, the "Department of Corrections or a local law enforcement agency in whose facility the sex offender is incarcerated" shall "[i]nform the

---

[1]Nevada law expressly provides that the failure of the court or relevant law enforcement agency to inform the sexual offender of the registration requirements does not affect the duty of the sex offender to register and comply with the provisions for registration. Nev. Rev. Stat. §§ 176.0927(2), 179D.450(4).

sex offender of the requirements for registration." Nev. Rev. Stat. § 179D.450(3). There is no evidence in the record regarding whether the Nevada court or relevant law enforcement agency informed Plasencia-Ayala of his registration responsibilities. In his guilty plea for open or gross lewdness, Plasencia-Ayala stated that "I understand that I will have to register as a sex offender."

After completing his sentence for the open or gross lewdness conviction, Plasencia-Ayala returned to his home in Reno, where he had resided prior to his conviction. The police subsequently discovered that Plasencia-Ayala was not registered as a sex offender. On March 11, 2004, Plasencia-Ayala pled guilty to "Failure to Register as a Sex Offender" in violation of Nev. Rev. Stat. §§ 179D.460, 179D.550 and 193.130, a felony. In his plea, Plasencia-Ayala admitted that "I did, willfully and unlawfully fail to register" with the relevant law enforcement agencies. At his removal hearing, Plasencia-Ayala indicated that he was aware that he was required to register, but thought that because the authorities knew where he lived he only needed to notify them if he moved. Plasencia-Ayala was sentenced to a prison term of 12-32 months, and ordered to pay fees and costs.

B

On February 14, 2006, the government filed a Notice to Appear (NTA) in which it charged that Plasencia-Ayala was removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having committed two crimes involving moral turpitude. Plasencia-Ayala's removal hearing was held on April 24, 2006. Following the hearing, the immigration judge issued an oral decision holding Plasencia-Ayala removable on the ground that he had committed two crimes involving moral turpitude, and denying his requests for cancellation of removal and voluntary departure.

The IJ held that Plasencia-Ayala's convictions for gross lewdness and failure to register constituted crimes involving

moral turpitude. The IJ found that the proliferation of sexual offender laws "indicates a clear demand by the people of the United States to have knowledge of the location and the crimes of individuals who must register as sex offenders." The IJ concluded that due to the dangerousness of sexual offenders and the risk of recidivism, "this crime is considered morally turpitudinous and of such a nature that the people of the State of Nevada find it to be vile, base and of a nature to offend their morals." Finally, the IJ found that while Mr. Plasencia-Ayala was eligible for cancellation of removal, he was undeserving of the discretionary relief.

Plasencia-Ayala appealed the IJ's decision to the BIA. In his brief, Plasencia-Ayala argued that the failure to register as a sex offender could not constitute a crime of moral turpitude because it can occur without a willful *mens rea*, and that the IJ erred in his discretionary denial of cancellation of removal by not giving sufficient weight to Plasencia-Ayala's long years of residence, family ties and limited criminal history.

In a July 21, 2006 order, the BIA dismissed Plasencia-Ayala's appeal. In its decision, the BIA first observed that Plasencia-Ayala did not dispute that his conviction for gross lewdness constituted a crime of moral turpitude and deemed the issue abandoned. The BIA then turned to Plasencia-Ayala's conviction for failure to register. It concluded that Nev. Rev. Stat. § 179D.550 "punishes some behavior that might be considered a crime involving moral turpitude, such as providing false information to police, as well as some non-turpitudinous behavior, such as the catch-all 'otherwise violates' provision." The BIA concluded that Plasencia-Ayala's failure to register was a crime of moral turpitude, agreeing with the IJ that "when the respondent willfully failed to register, he attempted to avert being labeled a sex offender, thereby preventing the members of the community from protecting their families from him."

In its decision, the BIA did not address Mr. Plasencia-Ayala's contention that the IJ had erred by denying his request for cancellation of removal.

On July 27, 2006, Plasencia-Ayala timely filed a petition for review with this Court. Plasencia-Ayala subsequently filed a motion to reconsider with the BIA on April 11, 2006, arguing that the BIA had erroneously found him removable and had failed to address the IJ's denial of his request for cancellation of removal. In a May 15, 2007 order, the BIA granted the motion to reconsider but again dismissed the appeal. In its decision, the BIA began by explaining the scope of its review: "Because we previously did not address the respondent's argument challenging the Immigration Judge's discretionary denial of his cancellation of removal application, we will reconsider the appeal for the limited purpose of addressing that argument." At the conclusion of its decision, the BIA again stated that it was "grant[ing] the motion for the limited purpose of addressing the respondent's challenge" to the denial of cancellation.

Nonetheless, the BIA went on to address the issue of whether Plasencia-Ayala's conviction for failure to register constituted a crime involving moral turpitude. The BIA largely adopted the analysis from its recent decision *Matter of Tobar-Lobo*, 24 I. & N. Dec. 143, 146-47 (BIA 2007), in which it held that the willful[2] failure to register under the California sex offender registration statute represents a base or depraved act. Following *Matter of Tobar-Lobo*, the BIA determined that because convictions under the Nevada registration statute do not require proof of any specific state of

---

[2]The Supreme Court of California has broadly interpreted the California registration statute's "willfulness" requirement to include instances where an individual has merely forgotten to register. *People v. Barker*, 96 P.3d 507, 515 (Cal. 2004); *but see People v. Sorden*, 113 P.3d 565, 570 (Cal. 2005) (holding that the failure to register because of a severe depression does not constitute a "willful" failure to register).

mind, they could not "categorically" amount to crimes of moral turpitude. However, the BIA concluded that under the "modified categorical" approach, Plasencia-Ayala's "willful and unlawful" failure to register was morally turpitudinous. Finally, the BIA found that the IJ had properly exercised its discretion in denying Plasencia-Ayala's application for cancellation of removal. Plasencia-Ayala has not petitioned for review of the BIA's May 15, 2007 order.

## II

Where the BIA conducts a *de novo* review and issues its own decision, rather than adopting the IJ's decision as its own, we review the BIA's decision. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). To the extent the BIA incorporates the IJ's decision as its own, we review both the decisions of the BIA and IJ. *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 n.3 (9th Cir. 2004).

We review *de novo* "whether a state statutory crime constitutes a crime involving moral turpitude." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1067 (9th Cir. 2007) (en banc) (internal quotations omitted). The government argues that the BIA's decision is entitled to *Chevron* deference because it was based on its prior precedential decision and cited Ninth Circuit precedent. However, as the government acknowledges, we have rejected that *Chevron* deference should apply to the BIA's interpretation of the "amorphous phrase" "crime involving moral turpitude" because the BIA has done nothing to particularize the meaning of the term. *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1058 n.9 (9th Cir. 2006). The BIA's construction of a state statute is likewise due no deference because it is "not a statute which the BIA administers or has any particular expertise in interpreting." *Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 843 (9th Cir. 2003).

## III

The government argues that the BIA's May 15, 2007 decision granting Plasencia-Ayala's motion to reconsider *de facto*

vacated and superseded its July 21, 2006 order. Accordingly, the government argues, the July 21, 2006 order is no longer "final" and this Court is divested of jurisdiction to review it. We disagree.

Under 8 U.S.C. § 1252(a)(1), this Court only has jurisdiction to review "final" orders of removal. An order of removal made by the immigration judge at the conclusion of a removal proceeding becomes final upon "a determination by the Board of Immigration Appeals affirming such order." 8 U.S.C. § 1101(a)(47)(B)(I); 8 C.F.R. § 1241.1(a). To seek judicial review of an order of removal, an alien must file a petition for review with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings within 30 days of the BIA's issuance of the final order. *See* 8 U.S.C. § 1252(b)(1)-(2).

In addition, the alien may simultaneously file a motion for reconsideration within 30 days of the BIA's issuance of the final order. *See* 8 U.S.C. § 1229a(c)(6); 8 C.F.R. § 1003.2(b). It is within the BIA's discretion to grant or deny a motion for reconsideration. 8 C.F.R. § 1003.2(a). "If the motion to reconsider is granted, the decision upon such reconsideration shall affirm, modify or reverse the original decision made in the case." 8 C.F.R. § 1003.2(i). The BIA's decision to grant or deny a motion to reconsider is treated as a separate and independent "final order" for which the alien can seek judicial review. *See Sarmadi v. INS*, 121 F.3d 1319, 1321 (9th Cir. 1997). Under the INA, "when a petitioner seeks review of an order [of removal], any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order." 8 U.S.C. § 1252(b)(6).

In *Stone v. INS*, 514 U.S. 386 (1995), the Supreme Court explained that the Immigration and Nationality Act ("INA") creates parallel tracks for administrative and judicial review. The INA's consolidation provision "contemplates two petitions for review": a motion for reconsideration at the adminis-

trative level, and a separate petition for judicial review. *Id.* at 394. Congress' purpose in adopting this structure was to accelerate the process of judicial review. *Id.* at 399. Accordingly, "the action [for judicial] review [of] the underlying order remains active and pending" while the BIA adjudicates the motion to reconsider. *Id.* at 393.

The petitioner in *Stone* had waited to file his petition for review until after the BIA denied his motion for reconsideration. He argued that his petition for review was timely because the filing of the motion for reconsideration tolled the deadline for filing a petition for review. The Court found that a "tolling rule's policy of delayed review would be at odds with the congressional purpose" of expediting the process of judicial review. *Id.* at 400. The Court concluded that "a deportation order is final, and reviewable, when issued" and "[i]ts finality is not affected by the subsequent filing of a motion to reconsider." *Id.* at 405.

**[1]** Following *Stone*, courts have uniformly found that the denial of a motion to reconsider — much like the filing of a motion to reconsider — does not affect federal court jurisdiction over the underlying removal order. *See, e.g.*, *Khouzam v. Ashcroft*, 361 F.3d 161, 167 (2d Cir. 2004); *Desta v. Ashcroft*, 329 F.3d 1179, 1183-84 (10th Cir. 2003).

**[2]** Only one court has considered the effect of the BIA's grant of a motion to reconsider on a pending petition for review. In *Jaggernauth v. United States Attorney General*, 432 F.3d 1346 (11th Cir. 2005), the BIA granted the petitioner's motion for reconsideration and again affirmed the IJ's determination that the petitioner was removable for having committed an aggravated felony. The BIA's order granting the motion included some additional analysis on the aggravated felony issue. *Id.* at 1351. As in this case, the government contended that the court did not have jurisdiction because Jaggernauth had only appealed the BIA's first decision and the BIA's grant of the motion for reconsideration had

rendered that decision "non-final." *Id.* Relying on the fact that the order granting reconsideration had expressly affirmed the BIA's original decision, the Eleventh Circuit held that the original BIA decision remained "final" and that the court retained jurisdiction over it.

**[3]** We agree with the Eleventh Circuit's conclusion. Where the BIA's decision granting a motion for reconsideration expressly affirms the BIA's prior decision and its analysis does not significantly differ, there is little reason to require "the petitioner to raise the identical issue again in a petition to review the BIA's decision on the motion to reconsider." *Desta*, 329 F.3d at 1184. *Stone* recognizes that Congress created parallel processes of administrative and judicial review of the BIA's decisions to expedite the removal process. Once a petition for review has been filed, federal court jurisdiction is divested only where the BIA subsequently vacates or materially changes the decision under review.[3]

The government argues that the BIA's grant of a motion to reconsider is analogous to its grant of a motion to reopen. This contention is puzzling because the government has always drawn a sharp distinction between the two forms of relief, and the BIA has carefully described the differences in its regulations. 8 CFR § 1003.2.

Several courts of appeals, including ours, have held that a grant of a motion to reopen vacates the final order of deportation. *See, e.g.*, *Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004); *Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002). But, as the BIA has stated, a motion to reconsider is

---

[3]We also note that the BIA is empowered to vacate its prior decisions, and has expressly done so on a number of occasions. *See, e.g.*, *Matter of Eslamizar*, 23 I. & N. Dec. 684, 689 (BIA 2004); *Matter of Ramos*, 23 I. & N. Dec. 336, 347 (BIA 2002). Since the BIA has the power to vacate its decisions expressly, there is little need to adopt a rule that every grant of a motion to reconsider constitutes a *de facto* vacature of its prior decision.

"fundamentally different" from a motion to reopen. *Matter of Cerna*, 20 I. & N. Dec. 399, 402 (BIA 1991). A motion to reconsider challenges the correctness of the BIA's decision based on the existing record. *Id.* at 402-03. A motion to reopen, by contrast, "seeks to reopen proceedings so that new evidence can be presented and so that a new decision can be entered, normally after a further evidentiary hearing." *Id.* at 403. Therefore, the grant of a motion to reopen automatically vacates the initial deportation order because it is based on a record that the BIA has deemed incomplete. But the grant of a motion to reconsider does not necessarily indicate that the underlying deportation order is similarly defective.

**[4]** Accordingly, in light of *Stone*, we hold that the BIA's grant of the motion to reconsider did not divest us of jurisdiction over Plasencia-Ayala's petition for review. In its order granting Plasencia-Ayala's motion to reconsider, the BIA expressly affirmed its prior decision. Further, the BIA twice emphasized that it was granting the motion for the "limited purpose" of addressing the IJ's discretionary denial of cancellation of removal. Although the decision provides a fuller description of the "categorical" and "modified categorical" approaches, and cited to its recent decision in *Matter of Tobar-Lobo*, its analysis of the moral turpitude issue was substantially the same as in its previous order. As such, we retain jurisdiction over Plasencia-Ayala's petition for review.

IV

The BIA erred in concluding that Plasencia-Ayala's conviction for "failure to register" constitutes a crime involving moral turpitude.

A

"To determine whether a conviction is for a crime involving moral turpitude, we apply the categorical and modified categorical approaches established by the Supreme Court" in

*Taylor v. United States*, 495 U.S. 575, 599-602 (1990). *Navarro-Lopez*, 503 F.3d at 1067. Under the "categorical" approach, we compare the elements of the statute of conviction to the generic definition of a crime to determine whether the full range of conduct proscribed by the statute is broader than — and so does not categorically fall within — the generic definition. *Id.* at 1067-68. In doing so, we do not "examine the underlying facts of the prior offense, but 'look only to the fact of conviction and the statutory definition of the prior offense.' " *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203, 1212-13 (9th Cir. 2002) (en banc) (quoting *Taylor*, 495 U.S. at 602).

[5] Although there are no statutorily established elements identifying a crime involving moral turpitude, courts have characterized moral turpitude as generally involving conduct that is "inherently base, vile, or depraved, and contrary to the private and social duties man owes to his fellow men or to society in general." *Navarro-Lopez*, 503 F.3d at 1068. Crimes are deemed to involve moral turpitude if they fall into one of two categories: 1) grave acts of baseness and depravity that offend the most fundamental values of society and 2) offenses involving fraud. *Id.* at 1074-75 (Reinhardt, J., concurring).[4] To fall in the first category, the crime must involve "some level of depravity or baseness 'so far contrary to the moral law' that it gives rise to moral outrage." *Id.* at 1071 (citing *Jordan v. De George*, 341 U.S. 223, 236 n.9 (1951) (Jackson, J., dissenting)). Such crimes " 'must be done willfully' or with 'evil intent.' " *Quintero-Salazar v. Keisler*, 506 F.3d 688, 693 (9th Cir. 2007) (quoting *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1165-66 (9th Cir. 2006)). The requirement of a "willful" or "evil" state of mind has long been recognized by this Court, *Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir. 1993), *Hirsch v. INS*, 308 F.2d 562, 567 (9th Cir. 1962), and by other courts of appeals, *see Fernandez-Ruiz*,

---

[4]Judge Reinhardt's opinion, although denoted a concurrence, was joined by a majority of the en banc court.

468 F.3d at 1166 (collecting cases). The Second Circuit has observed that a "corrupt scienter is the touchstone of moral turpitude." *Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000).

The statute at issue here is Nev. Rev. Stat. § 179D.550, which provides that a sex offender who

> (a) Fails to register with a local law enforcement agency; (b) Fails to notify the local law enforcement agency of a change of address; (c) Provides false or misleading information to the Central Repository or a local law enforcement agency; or (d) Otherwise violates the provisions of *NRS 179D.350 to 179D.550*, inclusive, is guilty of a category D felony and shall be punished as provided in *NRS 193.130*.

[6] The BIA found that Plasencia-Ayala's "willful" failure to register under Nev. Rev. Stat. § 179D.550 constituted a base and depraved act. The government correctly points out that this Court has held that "[a] crime involving the willful commission of a base or depraved act is a crime involving moral turpitude, whether or not the statute requires proof of evil intent." *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994). However, a conviction under Nev. Rev. Stat. § 179D.550 requires neither willfulness nor a base or depraved act. Significantly, there is no state of mind requirement in § 179D.550. The statute creates strict liability for failing to register, failing to notify of a change of address, providing false or misleading information or otherwise violating the registration requirements. A defendant can be convicted under § 179D.550 for simply forgetting to register for several days past the registration deadline, or even for accidentally sending his registration forms to the wrong address. Therefore, because § 179D.550 "is a strict liability crime that does not require any showing of scienter, it lacks the requisite element of willfulness or evil intent as required by" our precedent. *Quintero-Salazar*, 506 F.3d at 693; *see also Mei v. Ashcroft*, 393 F.3d 737, 740 (7th Cir. 2004) ("crimes deemed not

to involve moral turpitude . . . are either very minor crimes that are deliberate or graver crimes committed without a bad intent, most clearly strict-liability crimes").

**[7]** Moreover, the conduct proscribed by Nev. Rev. Stat. § 179D.550, even if undertaken willfully, does not involve "some level of depravity or baseness 'so far contrary to the moral law' that it gives rise to moral outrage." *Navarro-Lopez*, 503 F.3d at 1071 (citation omitted). The Nevada Supreme Court has recognized that Nev. Rev. Stat. § 179D.550 is regulatory — not punitive — in nature. *Nollette v. Nevada*, 46 P.3d 87, 91 (Nev. 2002) ("registration requirements for certain criminal offenders are viewed as a law enforcement technique and are not designed to serve traditional aims of punishment, deterrence, and retribution"). "Where an act is only statutorily prohibited, rather than inherently wrong, the act generally will not involve moral turpitude." *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1018 (9th Cir. 2005); *Beltran-Tirado v. INS*, 213 F.3d 1179, 1184 (9th Cir. 2000) (holding that conduct that is *mala prohibita* is generally not considered to involve moral turpitude); *Mei*, 393 F.3d at 741 (holding that the distinction between crimes that involve moral turpitude and those that do not corresponds "to the distinction between crimes that are malum in se and crimes that are malum prohibitum"). Indeed, the BIA has recognized that "crime involving moral turpitude" has been defined "as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude." *In re Flores*, 17 I. & N. Dec. 225, 227 (BIA 1980).

In *Matter of Tobar-Lobo*, the BIA held that the failure to register is an act in which "evil intent" is inherent to the crime, even if it is done inadvertently:

> Some obligations, once imparted by proper notification, are simply too important not to heed. That is,

even if 'forgotten,' an offense based on a failure to fulfill the offender's duty to register contravenes social mores to such an extent that it is appropriately deemed turpitudinous. In our view, willful failure to register by a sex offender who has been previously apprised of his obligation to register implicitly involves evil intent, even if the obligation may have been 'forgotten.'

24 I. & N. Dec at 146-47. In support of its position, the BIA cited to several cases in which this Court held that commission of certain base or depraved acts is considered inherently morally turpitudinous. *See Gonzales-Alvarado v. INS*, 39 F.3d 245, 247 (9th Cir. 1994) (incest); *Grageda v. INS*, 12 F.3d 919, 920 (9th Cir. 1993) (spousal abuse); *Guerrero de Nodahl v. INS*, 407 F.2d 1405, 1406-07 (9th Cir. 1969) (child abuse); *Bendel v. Nagle*, 17 F.2d 719, 720 (9th Cir. 1927) (statutory rape). However, in each of those cases, the statutes at issue served to protect "vulnerable classes of citizens who are both directly and personally the victims of those crimes."[5] *Matter of Tobar-Lobo*, 24 I. & N. Dec. at 149 (Filppu, B.M., dissenting). By contrast, to be convicted under Nev. Rev. Stat. § 179D.550, "[n]o harm to any person need be shown, nor any intent to cause harm, nor even a level of deviousness." *Id.* (Filppu, B.M., dissenting). As with most regulatory statutes, a violation of § 179D.550 causes no direct or particularized injury. *Cf. Galeana-Mendoza*, 465 F.3d at 1060-61 (holding that statute did not qualify as a crime of moral turpitude because it lacks an injury requirement); *Fernandez-Ruiz*, 468 F.3d at 1167 (same).

---

[5]Additionally, each of the first three cases required proof of willful conduct, which Nev. Rev. Stat. § 179D.550 does not. Although it is not clear from the opinion, presumably *Bendel* involved a strict liability statutory rape statute. However, this Court recently cast doubt on the relevance of that case to modern moral turpitude analysis. *See Quintero-Salazar*, 506 F.3d at 694 n.4.

In *Matter of Tobar-Lobo*, the BIA identified the harm caused by failure to register as a "breach owed to society" because it prevents law enforcement authorities and others from becoming "aware of the potential danger posed by such an offender." 24 I. & N. Dec. at 147. "However, commission of *any* crime, by definition, runs contrary to *some* duty owed to society. If this were the sole benchmark for a crime involving moral turpitude, every crime would involve moral turpitude." *Navarro-Lopez*, 503 F.3d at 1070-71 (emphasis in original). While a sex offender's breach of the duty to notify may deprive law enforcement and others of valuable information, it does not demonstrate moral depravity.

**[8]** The IJ and BIA correctly observed that the recent proliferation of sex offender registration laws reflects our society's increasing outrage with sexual offenses. But it is the sexual offense that is reprehensible, not the failure to register. Registration statutes can serve important purposes by helping to prevent future sex crimes, and assisting law enforcement in apprehending recidivist offenders. But registration is not itself a socially desirable good. *See Fong v. INS*, 308 F.2d 191, 195 (9th Cir. 1962) (holding that an alien who was deportable for failing to register with the Attorney General had committed "only a minor infraction" and that his record showed "no moral turpitude whatever"). Therefore, we hold that the mere failure to register as a sex offender cannot constitute morally turpitudinous behavior.

B

**[9]** Where the statute of conviction is categorically broader than the generic definition of a crime involving moral turpitude, this Court employs the "modified categorical" approach. *Navarro-Lopez*, 503 F.3d at 1073. However, the "modified categorical" approach only applies when the particular elements in the statute of conviction are broader than the generic crime. *Id.* When the statute of conviction is missing an element of the generic crime altogether, we cannot hold that "a

jury was actually required to find all the elements" of the generic crime. *Id.* The crime of failing to register, like the accessory crime at issue in *Navarro-Lopez*, lacks an element of the generic crime: the requisite baseness or depravity. Therefore, there is no reason to apply the "modified categorical" approach in this case.

## V

**[10]** Because failure to register under Nev. Rev. Stat. § 179D.550 does not qualify as a crime involving moral turpitude within the meaning of 8 U.S.C. § 1182(a)(2)(A)(i)(I), the BIA and IJ erred in holding that Plasencia-Ayala was removable.

**PETITION GRANTED.**