**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GURSHARAN SINGH PANNU,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 07-71988

Agency No.
A042-385-535

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 14, 2011—Pasadena, California

Filed May 11, 2011

Before: Stephen Reinhardt, Michael Daly Hawkins, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Hawkins

## COUNSEL

Joseph J. Siguenza and Ashwani K. Bhakhri, Law Offices of Ashwani K. Bhakhri, Burlingame, California, for the petitioner.

John B. Holt and Rebecca Hoffberg, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

## OPINION

HAWKINS, Senior Circuit Judge:

Gursharan Singh Pannu ("Pannu"), a native of India admitted to the United States in 1990 as a lawful permanent resident ("LPR"), petitions for review of a decision by the Board of Immigration Appeals ("BIA"), affirming the immigration

judge's ("IJ") determination that he is removable for having been convicted of two or more crimes involving moral turpitude ("CIMT"), one being his failure to register as a sex offender as required by California law. Because of several significant legal developments since the BIA issued its decision in 2007, we remand for the BIA to consider their impact on this case in the first instance. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam).

## FACTS AND PROCEDURAL HISTORY

Pannu came to the United States in 1990 as a LPR. In 1994, he was convicted under California Penal Code § 314.1 of misdemeanor indecent exposure. Later that same year, he was convicted a second time for indecent exposure. The second conviction was classified as a felony, requiring Pannu to register as a sex offender.

In 2001, Pannu was convicted of misdemeanor theft under California Penal Code § 484(a). In 2002, he was convicted under California Penal Code § 290(g)(1) for the misdemeanor of failing to register as a sex offender.

Pannu was issued a Notice to Appear in January 2004, charging him with removability for convictions of two or more crimes involving moral turpitude, and for conviction of an aggravated felony (this basis for removal was later withdrawn). Pannu conceded the fact of his four convictions and conceded that his theft conviction qualified as a CIMT. He denied that the remaining convictions constituted CIMTs, and also sought relief from inadmissibility.

In August 2004, an IJ pretermitted his applications for relief and ordered him removed for having been convicted of two or more CIMTs. 8 U.S.C. § 1227(a)(2)(A)(ii). Pannu

appealed; the BIA held that Pannu's convictions for indecent exposure were categorically[1] CIMTs.

Pannu then petitioned this court for review. In the prior appeal, we determined that the indecent exposure convictions were not *categorically* CIMTs, and remanded for the BIA to either apply the modified categorical analysis or determine whether the failure to register conviction constituted a CIMT. *Pannu v. Gonzales*, No. 05-70422, 2006 WL 2233237 (9th Cir. Aug. 4, 2006).

On remand, the BIA determined that Pannu's conviction for failing to register constituted a CIMT, and, coupled with the conceded theft CIMT, rendered him removable. The BIA thus found it unnecessary to conduct a modified categorical analysis regarding Pannu's indecent exposure convictions. Pannu now seeks review of the BIA's determination.

## DISCUSSION

The law impacting this case has changed considerably since the BIA's decision. Shortly before we remanded to the BIA in the previous appeal, the BIA issued a precedential decision, *In re Tobar-Lobo*, 24 I. & N. Dec. 143 (BIA 2007), which held that a failure to register as a sex offender in violation of California Penal Code § 290(g)(1) categorically constituted a CIMT.[2] Pannu was convicted of the same California failure to register statute as Tobar-Lobo. Thus, when the BIA addressed

---

[1] *See generally Taylor v. United States*, 495 U.S. 575 (1990).

[2] The version of California law in effect at the time of Pannu's conviction provided:

> Any person who is required to register under this section based on a misdemeanor conviction or juvenile adjudication who willfully violates any requirement of this section is guilty of a misdemeanor punishable by imprisonment in a county jail not exceeding one year.

Cal. Penal Code § 290(g)(1) (2002).

Pannu's case following our remand, it understandably found the intervening *Tobar-Lobo* decision to be controlling. However, subsequent to the BIA's decision in this case, we considered whether failure to register as a sex offender under a similar Nevada law (Nev. Rev. Stat. § 179D.550) constituted a CIMT. *Plasencia-Ayala v. Mukasey*, 516 F.3d 738 (9th Cir. 2008).

Reviewing the BIA's decision *de novo*, we rejected its reasoning, explaining that moral turpitude involves conduct that is "inherently base, vile, or depraved," and that such crimes must be done willfully or with evil intent. *Id.* at 746 (citations omitted). We noted that the Nevada law creates strict liability for failing to register or notify of a change of address, so that a defendant could be convicted for forgetting to register or even for accidentally sending his registration forms to the wrong address. *Id.* at 747; *see also id.* at 743 n.2 (noting that although the California statute purportedly requires willfulness, it also extends to forgetfulness).

**[1]** We also rejected the BIA's reasoning that the failure to register was a breach of a duty owed to society, noting that commission of any crime, by definition, runs contrary to *some* duty owed to society, but does not necessarily demonstrate moral depravity. *Id.* at 748. We concluded that "it is the sexual offense that is reprehensible, not the failure to register" and that although the registration laws may serve useful purposes, "the mere failure to register as a sex offender cannot constitute morally turpitudinous behavior." *Id.* at 748-49.

**[2]** Later still, however, this court, sitting en banc, held that we should afford *Chevron*[3] deference to the BIA's unpublished determinations of whether a crime constitutes a CIMT, if those decisions rely on prior precedential decisions of the BIA that are dispositive of the interpretive issue in the case.

---

[3]*Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

*Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2009) (en banc) ("[W]e conclude that where, as here, the Board determines that certain conduct is morally turpitudinous in a precedential decision, we apply *Chevron* deference regardless of whether the order under review is the precedential decision itself or a subsequent unpublished order that relies upon it."). In doing so, the en banc court expressly overruled *Plasencia-Ayala* to the extent it employed a *de novo* standard of review, but did not otherwise address the merits of *Plasencia-Ayala*'s analysis of the sex offender registration CIMT issue. *Id.*

**[3]** Furthermore, subsequent to the BIA's decision below, the Attorney General issued an opinion in *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008), for the purpose of producing a standardized approach to making determinations of CIMTs to replace the "patchwork of conflicting legal and evidentiary standards" existing in the circuit courts. *Id.* at 688. The Attorney General: (1) opined that the IJ or BIA must determine whether there is a "realistic probability, not a theoretical possibility" that the underlying criminal statute would be applied to reach conduct that does not involve moral turpitude, *id.* at 690 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); (2) noted that if the categorical analysis does not resolve the inquiry, the agency should proceed to a modified categorical inquiry, first considering the typical record of conviction documents, but permitting an examination of evidence beyond the formal record of convictions,[4] *id.*; and (3) most important here, addressed the proper definition of moral turpitude, explaining that "[a] finding of moral turpitude under the Act requires that a perpetrator have committed the reprehensible act *with some form of scienter*," *id.* at 706 (emphasis added).

---

[4]As in *Marmolejo-Campos*, this portion of the Attorney General's decision is not before us and we express no opinion regarding it. *See* 558 F.3d at 907 n.6.

In *Marmolejo-Campos,* we frequently cited *Silva-Trevino* for this scienter requirement, noting that the "presence of scienter" is "an essential element of a crime involving moral turpitude." 558 F.3d at 915; *see also id.* at 910, 914, 916. We also applied *Silva-Trevino* in *Saavedra-Figueroa v. Holder*, 625 F.3d 621 (9th Cir. 2010), concluding that a misdemeanor false imprisonment conviction was not categorically a CIMT, and noting that this result was not inconsistent with *Silva-Trevino*, because the misdemeanor conviction lacked any degree of scienter. *Id.* at 627.

**[4]** We perceive the *Silva-Trevino* scienter requirement to be in tension with the BIA's earlier decision in *Tobar-Lobo*. Even though the California sex offender registration statute facially requires a willful violation, the BIA acknowledged that it had been applied by California courts to include even mere forgetfulness. *Tobar-Lobo*, 24 I. & N. Dec. at 144-45 (citing *People v. Barker*, 96 P.3d 507 (Cal. 2004); *People v. Cox*, 115 Cal. Rptr. 2d 123 (Cal. Ct. App. 2002)). That California courts have applied the statute in such a manner makes clear that there is a "realistic probability," and not just a "theoretical possibility," of such an application. *Silva-Trevino*, 24 I. & N. Dec. at 697-98. The result is, in effect, a strict liability crime. *Cf. id.* at 706-07 (rejecting conclusion that Texas statute involving sexual conduct with a minor is a categorical CIMT because it lacked a mistake-of-age defense).[5]

**[5]** In light of these significant intervening developments, we remand for the BIA to reconsider whether Pannu's crime constitutes a CIMT under the "proper definition of moral turpitude" as outlined in *Silva-Trevino*, *id.* at 705-06. *See Ven-*

[5]On remand the BIA may also wish to consider the additional analysis of the *Tobar-Lobo* decision contained in this court's earlier decision in *Plasencia-Ayala* and more recently by the Tenth Circuit in *Efagene v. Holder*, ___ F.3d ___, No. 10-9546, 2011 WL 1614299 (10th Cir. Apr. 29, 2011), as the BIA did not have the benefit of these decisions at the time of its prior ruling.

*tura*, 537 U.S. at 16 (stating that a "court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands"); *see also Lopez v. Ashcroft*, 366 F.3d 799, 806-07 (9th Cir. 2004) (noting we generally remand if BIA has applied erroneous legal standard). Should the BIA determine Pannu's failure to register conviction does not qualify as a CIMT, it should consider the issue left open in its prior ruling regarding Pannu's indecent exposure convictions.

**REMANDED** for further proceedings consistent with this disposition.