**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARCO ANTONIO ROBLES-URREA,
                    *Petitioner,*

            v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 06-71935

Agency No.
A037-805-968

MARCO ANTONIO ROBLES-URREA,
                    *Petitioner,*

            v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 06-74826

Agency No.
A037-805-968

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 12, 2009—San Francisco, California
Submission Vacated March 9, 2010
Resubmitted August 16, 2011

Filed April 23, 2012

4299

Before: Mary M. Schroeder and Stephen Reinhardt, Circuit Judges, and Louis H. Pollak,* Senior District Judge.

Opinion by Judge Reinhardt

---

*The Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

**COUNSEL**

Holly S. Cooper (argued), Cooper & White, Davis, California, for the petitioner.

Gregory G. Katsas, Assistant Attorney General; Bryan S. Beier, Senior Litigation Counsel, Office of Immigration Litigation; Anh-Thu P. Mai-Windle (argued), Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

REINHARDT, Circuit Judge:

Marco Antonio Robles-Urrea, a lawful permanent resident of the United States, petitions for review of a precedential decision of the Board of Immigration Appeals ("BIA"), holding that his conviction for misprision of a felony is categorically a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I). We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review constitutional and legal questions raised by aliens found removable on the basis of criminal activity. *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1056-57 (9th Cir. 2006). We grant the petition for review in No. 06-74826 and deny as moot the petition for review in No. 06-71935.

A crime involving moral turpitude is either one that involves fraud or one that involves grave acts of baseness or depravity, such that its commission "offend[s] the most fundamental values of society." *Navarro-Lopez v. Gonzales*, 503

F.3d 1063, 1074-75 (9th Cir. 2007) (en banc) (Reinhardt, J., concurring for the majority), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc). That an offense contravenes "societal duties" is not enough to make it a crime involving moral turpitude; otherwise, every crime would involve moral turpitude. *Id.* at 1070 (majority opinion). Because the BIA relied on this flawed rationale in concluding that misprision of a felony is a crime involving moral turpitude, we cannot defer to its interpretation of the Immigration and Nationality Act ("INA"). Instead, we hold that misprision of a felony is not categorically a crime involving moral turpitude.

We remand, however, to allow the BIA to conduct a modified categorical analysis of Robles-Urrea's conviction, *see INS v. Ventura*, 537 U.S. 12 (2002), and to consider whether Robles-Urrea is alternatively removable under 8 U.S.C. § 1182(a)(2)(C)(i), as an alien who "has been an illicit trafficker in any controlled substance." On remand, the agency may also consider Robles-Urrea's eligibility for relief from removal.

## I

In 2002, Robles-Urrea pleaded guilty to misprision of a felony under 18 U.S.C. § 4, which states that any person who,

> having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

The felony that Robles-Urrea allegedly concealed was conspiracy to distribute marijuana and cocaine.

In 2005, having served his sentence for misprision, Robles-Urrea was stopped at the Arizona border as he was returning to the United States from Mexico.[1] The Department of Homeland Security ("DHS") served him with a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(2)(C) as a drug trafficker. DHS subsequently charged him with an additional ground of removability under 8 U.S.C. § 1182(a)(2)(A)(i)(I), for having been convicted of a crime involving moral turpitude.

Robles-Urrea contested both charges and applied for cancellation of removal. The Immigration Judge ("IJ") found him removable but did not specify on which ground.[2] The IJ also found him ineligible for cancellation of removal under 8 U.S.C. § 1229b because his conviction for misprision of a felony had prevented him from accruing the requisite five years of permanent residency and seven years of lawful residency in the United States.

Robles-Urrea appealed, arguing that he is not inadmissible under either § 1182(a)(2)(A)(i)(I) or § 1182(a)(2)(C) and that he is eligible for cancellation of removal. On April 10, 2006, the BIA dismissed the appeal, finding "that one who knows a felony has been committed and takes *affirmative steps* to conceal the crime or to prevent its discovery by the authorities has committed a crime involving moral turpitude." The BIA also held that Robles-Urrea's commission of this offense, which could not fall under the petty offense exception, interrupted the requisite seven-year residency under the "stop-time rule," 8 U.S.C. § 1229b(d)(1). It did not decide whether

---

[1]Robles-Urrea was stopped under 8 U.S.C. § 1101(a)(13), as a returning resident alien applying for admission with a prior criminal conviction.

[2]From the transcript of the hearing, it seems that the IJ sustained the charge of inadmissibility based on the conviction for misprision of a felony, which would be the moral turpitude ground. The IJ may have been confused about the nature of the conviction, however, as his order refers to the offense as "administration of a felony."

Robles-Urrea was removable for drug trafficking under 8 U.S.C. § 1182(a)(2)(C). Robles-Urrea filed a timely petition for review, docketed as No. 06-71935, from this order.

Robles-Urrea also filed with the BIA a motion to reconsider, arguing that the BIA's decision conflicted with *Matter of Sloan*, 12 I. & N. Dec. 840 (A.G. 1968, BIA 1966), which had held that misprision of a felony is not a crime involving moral turpitude and that the stop-time rule does not apply retroactively. The BIA granted the motion to reconsider and issued a precedential decision on September 27, 2006, overruling *Matter of Sloan* and holding that misprision of a felony is a crime involving moral turpitude. *Matter of Robles-Urrea*, 24 I. & N. Dec. 22 (BIA 2006). The BIA also concluded that the stop-time rule could apply retroactively. *Id.* The BIA thus reaffirmed its dismissal of Robles-Urrea's appeal. Robles-Urrea filed a timely petition for review, docketed as No. 06-74826, from this second BIA decision. That petition has been consolidated with his original petition for review.

We have jurisdiction to decide the question of law that Robles-Urrea raises: whether misprision of a felony qualifies as a crime involving moral turpitude. *See* 8 U.S.C. § 1252(a)(2)(D); *Galeana-Mendoza*, 465 F.3d at 1056-57. The BIA's grant of the motion for reconsideration does not divest us of jurisdiction over the petition for review of its initial order, because the analysis and the result reached by the BIA after reconsideration were substantially the same as in the previous order. *See Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 744-46 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009) (en banc). Because the precedential decision that the BIA issued upon granting the motion to reconsider effectively supersedes its initial, non-precedential opinion, however, the petition for review of that initial decision is moot.

## II

We begin by reviewing the BIA's determination that misprision of a felony is categorically a crime involving moral

turpitude. To determine whether a given offense constitutes a crime involving moral turpitude, we apply the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *Marmolejo-Campos*, 558 F.3d at 912. Under the categorical approach, which begins our inquiry, we "compare the elements of the crime to the generic definition of moral turpitude and decide whether the conduct proscribed in the statute is broader than, and so does not categorically fall within, this generic definition." *Nunez v. Holder*, 594 F.3d 1124, 1129 (9th Cir. 2010) (internal quotation marks omitted). In order to hold that the statute of conviction is overbroad, we must determine that there is a "realistic probability" of its application to conduct that falls beyond the scope of the generic federal offense. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 822 (2007).

When the elements of a given offense of conviction are clear, as they are here, "our review of the BIA's determination that such offense constitutes a 'crime of moral turpitude' is governed by the same traditional principles of administrative deference we apply to the Board's interpretation of other ambiguous terms in the INA." *Marmolejo-Campos*, 558 F.3d at 911. Under those traditional principles, we first ask "whether Congress has directly spoken to the precise question at issue." *Chevron USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). If the statute is unclear, then we ask "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Because Congress has not spoken directly to the question at issue, we consider whether the BIA has permissibly interpreted the statute. We conclude that the BIA's interpretation of the INA is impermissible. Instead, we hold that misprision of a felony is not categorically a crime involving moral turpitude.

## A

**[1]** Although the INA does not define "crime involving moral turpitude," courts and the BIA have generally defined

this term as comprising crimes that are "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Robles-Urrea*, 24 I. & N Dec. at 25; *see also Navarro-Lopez*, 503 F.3d at 1068 (using almost identical language). Such crimes are of two types: those involving fraud and those involving grave acts of baseness or depravity. *See id.* at 1074 (Reinhardt, J., concurring for the majority).

**[2]** As this definition makes clear, and as we explained in *Navarro-Lopez*, not all offenses against the accepted rules of social conduct qualify as crimes involving moral turpitude. For that matter, not all offenses against the accepted rules of social conduct qualify as crimes at all. "[O]ffenses that are so base, vile, and depraved that they qualify as crimes of moral turpitude 'even though they have no element of fraud' " typically "involve 'rather grave acts of baseness or depravity' such as murder, rape, and incest." *Id.* (quoting *Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 (9th Cir.1995)). The *Navarro-Lopez* majority further explained:

> Not all serious crimes meet this standard . . . . Indeed, we have determined, for example, that burglary, *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1020 (9th Cir. 2005), and assault with a deadly weapon, *Carr v. INS*, 86 F.3d 949, 951 (9th Cir. 1996), do not involve moral turpitude. To be considered a crime of moral turpitude, a crime other than fraud must be more than serious; it must offend the most fundamental moral values of society, or as some would say, 'shock[ ] the public conscience.' *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (quoting *Matter of Danesh*, 19 I. & N. Dec. 669, 670 (BIA 1988)).

*Id.* at 1074-75 (alteration in original). Only truly unconscionable conduct surpasses the threshold of moral turpitude.[3] We

---

[3] In *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (BIA 2008), the Attorney General purported to "establish a uniform framework for ensuring that

must determine whether misprision of a felony is *categorically* so base, vile, or depraved as to be morally turpitudinous.

**B**

**[3]** We begin that inquiry by reviewing the BIA's reasoning. Although the BIA properly recites the definition of a crime involving moral turpitude—noting that such a crime must be "inherently base, vile, or depraved" as well as "contrary to the accepted rules of morality and the duties owed between persons or to society in general," 24 I. & N Dec. at 25—it entirely fails to explain why misprision of a felony is "inherently base, vile, or depraved." The BIA relies almost wholly on a rationale introduced by the Eleventh Circuit in *Itani v. Ashcroft*, 298 F.3d 1213 (11th Cir. 2002), and embraced by our then-precedential panel decision in *Navarro-Lopez v. Gonzales*, 455 F.3d 1055 (9th Cir. 2006), *reh'g en banc granted by* 469 F.3d 800 (9th Cir. 2006). This rationale is that because misprision of a felony involves "both knowledge of a crime and some affirmative act of concealment or participation," *Branzburg v. Hayes*, 408 U.S. 665, 696 n.36 (1972) (citation omitted), and such "behavior . . . runs contrary to accepted social duties," *Itani*, 298 F.3d at 1216, it must be morally turpitudinous.[4]

---

the Act's moral turpitude provisions are fairly and accurately applied." *Id.* at 688. "[W]e have been hesitant to defer to such general statements," however, because the agency's "general understanding of the term 'moral turpitude' is not the result of 'any insights that it might have obtained from adjudicating immigration cases,' but simply a recitation of the definition found in the criminal law." *Marmolejo-Campos*, 558 F.3d at 910 (quoting *Mei v. Ashcroft*, 393 F.3d 737, 739 (7th Cir. 2004)). We therefore "rel[y] on our own generalized definition of 'moral turpitude,' although we have noted that our understanding does not differ materially from the Board's." *Id.* (citations omitted).

[4]Our order granting rehearing en banc in *Navarro-Lopez* (and rendering the panel opinion non-precedential) was not available to the BIA and was not filed until November 8, 2006, over a month after the BIA rendered its opinion in this matter.

The problem with this reasoning is that it "omit[s] the second crucial element of the definition of a crime involving moral turpitude: that the crime involve some level of depravity or baseness 'so far contrary to the moral law' that it gives rise to moral outrage." *Navarro-Lopez*, 503 F.3d at 1071.[5] As we have explained, the

> commission of any crime, by definition, runs contrary to some duty owed to society. If this were the sole benchmark for a crime involving moral turpitude, every crime would involve moral turpitude. We certainly owe a duty to society not to destroy another's property, not to assault another, and not to break and enter private property. Yet, we have held that convictions for these acts do not categorically involve moral turpitude.

*Id.* at 1070-71; *see also id.* at 1077 (Reinhardt, J., concurring for the majority). The *Itani* rationale is contrary to the statutory scheme: "[i]f Congress had intended any conviction to make an alien ineligible for cancellation of removal," then it would not have "designate[d] specific categories of crimes" to have this effect. *Id.* at 1071 (majority opinion).

**[4]** Having recapitulated the flawed reasoning of *Itani* and of the no longer precedential panel decision in *Navarro-Lopez*, the BIA's opinion pronounces in a conclusory fashion that misprision of a felony "is inherently base or vile." 24 I. & N. Dec. at 26. This *ipse dixit* lacks any reasoned founda-

---

[5]The quotation comes from Justice Jackson's dissent in *Jordan v. DeGeorge*, 341 U.S. 223 (1951). That dissent cites "an opinion on a deportation proceeding decided by the Board June 26, 1944, and approved by the Attorney General July 12, 1944," which "quoted with approval" a statement that " '[a] crime involving moral turpitude . . . is so far contrary to the moral law, as interpreted by the general moral sense of the community, that the offender is brought to public disgrace, is no longer generally respected, or is deprived of social recognition by good living persons.' " *Id.* at 236 n.9.

tion. So does the BIA's argument that misprision of a felony must be morally turpitudinous because "evil intent" is "implicit in the statutory requirement that the actor take an affirmative step *to conceal* a felony from the proper authorities." *Robles-Urrea*, 24 I. & N. Dec. at 27 (citing *Notash v. Gonzales*, 427 F.3d 693, 698 (9th Cir. 2005); *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994)). While *Notash* and *Gonzales-Alvarado* say that intent may inhere in the nature of a crime, they do not support the proposition that concealing a felony itself involves evil intent. In short, nothing in the BIA's reasoning supports the conclusion that it reaches.[6] We therefore conclude that the BIA's analysis is an impermissible construction of the INA, and we decline to defer to it.

## C

**[5]** Our *de novo* review of the issue lends no more support to the result that the BIA reaches. The government argues that misprision of a felony is base, vile, and depraved because it has been historically condemned. Gov't Br. 32-33. There is no question that "gross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship." *Roberts v. United States*, 445 U.S. 552, 558 (1980).

---

[6]In rejecting the BIA's reasoning, we do not rely on the fact that the BIA changed course, reversing its earlier decision in *Matter of Sloan*. "Un-explained inconsistency is . . . a reason for holding an interpretation to be arbitrary and capricious change from agency practice under the Administrative Procedure Act." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005); *see also Motor Veh. Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance."). "This rule . . . is reserved for rare instances," however, "such as when an agency provides no explanation at all for a change in policy, or when its explanation is so unclear or contradictory that we are left in doubt as to the reason for the change in direction." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 493 (9th Cir. 2007) (en banc). Even the BIA's sparse reasoning here surpasses this minimal threshold.

That only explains, however, why we choose to criminalize misprision of a felony in the first place. It says nothing about whether misprision of a felony is worse than any *other* crime —whether it is "more than serious," or whether it "offend[s] the most fundamental values of society," *Navarro-Lopez*, 503 F.3d at 1074-75 (Reinhardt, J., concurring for the majority). The point of the Court's statement in *Roberts* was simply to explain why a trial court could permissibly "consider[ ], as one factor in imposing sentence," a defendant's "refusal to cooperate with officials investigating a criminal conspiracy in which he was a confessed participant." *Id.* at 553.

**[6]** Misprision of a felony differs from other crimes of concealment that have been found to involve moral turpitude, because it requires not a specific *intent* to conceal or obstruct justice, but only *knowledge* of the felony. *Cf. Padilla v. Gonzales*, 397 F.3d 1016 (7th Cir. 2005), *overruled on other grounds by Ali v. Mukasey*, 521 F.3d 737 (7th Cir. 2008) (holding that obstruction of justice is a crime involving moral turpitude because it entails "an intent to conceal criminal activity"); *Smalley v. Ashcroft*, 354 F.3d 332, 339 (5th Cir. 2003) (holding that money laundering is a crime involving moral turpitude because it requires that the defendant intentionally conceal the proceeds of illegal drug sales); *Matter of Rivens*, 25 I. & N. Dec. 623 (BIA 2011) ("[A]n accessory[-after-the-fact] conviction is . . . one for a crime involving moral turpitude when the aid is knowingly provided *to help the principal escape prosecution or punishment* for a base or vile crime." (emphasis added)). As the BIA has recognized, in holding that misprision of a felony is not an offense relating to obstruction of justice under 8 U.S.C. § 1101(a)(43)(S), this offense "lacks the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." *Matter of Espinoza-Gonzalez*, 22 I. & N. Dec. 889, 894 (BIA 1999). Nothing in the statute prohibiting misprision of a felony "references the specific purpose for which the concealment must be undertaken." *Id.*; *see United States v. Dadanno*, 432 F.2d 1119, 1129 (7th Cir.

1970) (comparing accessory-after-the-fact liability and misprision of a felony and noting that "misprision does not require an intent to benefit the principal offender").

The BIA's holding would result in a peculiar rule: even where a principal offender has not committed a crime involving moral turpitude, a person who conceals that crime—and who thereby commits misprision of a felony—might be considered to have done so. In *Navarro-Lopez*, we pointed out the "absurd result" that if any "conviction for accessory-after-the-fact is necessarily a crime of moral turpitude," then even when "a principal who commits a crime may not have undertaken a morally turpitudinous act, . . . the person who gave the principal food and shelter" may be deemed necessarily to have done so. 503 F.3d at 1071. The same is true here.[7]

**[7]** We therefore find a "a realistic probability, not [just] a theoretical possibility," *Gonzales*, 549 U.S. at 822, that the misprision of a felony statute will encompass conduct that is not morally turpitudinous. As *Navarro-Lopez* explained, the relevant question "is not whether in some cases violators of" the misprision statute "have been involved in a crime of moral turpitude. The issue is whether everyone prosecuted under that [statute] has necessarily committed a crime involving moral turpitude." 503 F.3d at 1072. The en banc court in *Navarro-Lopez* found that there was "nothing inherent in the crime of accessory after the fact that makes it a crime involving moral turpitude in all cases." *Id.* We conclude that the same is true here. We therefore hold, contrary to the BIA's conclusion, that misprision of a felony is not categorically a crime involving moral turpitude.[8]

---

[7]In a later case, *Matter of Tejwani*, 24 I. & N. Dec. 97 (BIA 2007), the BIA explained that such a result is permissible because the affirmative concealment of a crime involves fraudulent behavior, regardless of the underlying crime. *Id.* at 99. The BIA's opinion here, however, does not offer this rationale or rely on a finding of fraudulent behavior.

[8]The BIA did not consider whether misprision of a felony is a crime involving moral turpitude because it is an "offense involving fraud,"

## III

**[8]** Because the offense of misprision of a felony "is categorically broader than the generic definition of a crime" involving moral turpitude, we must proceed to the modified categorical approach, examining whether the particular circumstances of Robles-Urrea's conviction rendered it morally turpitudinous. *Navarro-Lopez*, 503 F.3d at 1073. We would formerly have found it unnecessary to consider the modified categorical approach, because misprision of a felony lacks the requisite element of depravity or fraud necessary to fulfill the generic definition of a crime involving moral turpitude. *See id.* (holding that the modified categorical analysis "only applies when the particular elements of the crime of conviction are broader than the generic crime"). Such a course is no longer available, however, after *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc), which overruled the missing-element rule. As interpreted by *Aguila-Montes de Oca*, "the modified categorical approach

---

except to the extent that it relied on the Eleventh Circuit's decision in *Itani,* which had employed a fraud-based analysis. We need not decide whether misprision of a felony is an offense involving fraud, because "this court cannot affirm the BIA on a ground upon which it did not rely." *Navas v. INS*, 217 F.3d 646, 658 n.16 (9th Cir. 2000).

If we were required to reach the issue, however, we would conclude that misprision of a felony does not involve fraud. "A crime involves fraudulent conduct, and thus is a crime involving moral turpitude, if intent to defraud is explicit in the statutory definition of the crime or implicit in the nature of the crime." *Blanco v. Mukasey*, 518 F.3d 714, 719 (9th Cir. 2008) (internal quotation marks omitted). Intent to defraud is implicit in the nature of the crime only when "the individual makes false statements in order to procure something of value, either monetary or non-monetary." *Id.*; *accord Navarro-Lopez*, 503 F.3d at 1076 (Reinhardt, J., concurring for the majority); *Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir. 1993). Misprision of a felony does not explicitly contain an element of intent to defraud and does not require that the individual have acted in order to procure anything. *See Navarro-Lopez*, 503 F.3d at 1077 (Reinhardt, J. concurring for the majority) ("Depriving the government of evidence or information does not . . . rise to the level of fraud."); *Goldeshtein*, 8 F.3d at 649 (same).

asks what facts the conviction 'necessarily rested' on in light of the [prosecutorial] theory of the case as revealed in the relevant [judicially noticeable] documents, and whether these facts satisfy the elements of the generic offense." *Id.* at 937.[9]

**[9]** Robles-Urrea argues that even under *Aguila-Montes de Oca*, the modified categorical approach is inappropriate here, because "under no realistic prosecutorial theory would the non-element of depravity have been unnecessary to obtain a conviction for misprision of a felony." Supp. Br. at 5. Robles-Urrea misunderstands the rationale of *Aguila-Montes de Oca*. That opinion explained by way of example why it is appropriate to apply the modified categorical approach to determine whether a defendant has been convicted of an assault using a gun, even where the use of a gun is not an element of the defendant's crime of conviction. If the judicially noticeable "documents establish that the factfinder necessarily found that the defendant satisfied the 'harmful contact' element [of a hypothetical statute] by inflicting harmful contact with a gun," the majority wrote, "then the conviction 'necessarily rested' on this fact." 655 F.3d at 937. Similarly, *Aguila-Montes de Oca* requires a determination whether the facts on which Robles-Urrea's conviction necessarily rested, as established by the judicially noticeable documents in the record of conviction, make his conviction one involving moral turpitude. *See id.* at 940 ("Under the modified categorical approach, we determine, in light of the facts in the judicially noticeable documents, (1) what facts the conviction necessarily rested on (that is, what facts the trier of fact was actually required to find); and (2) whether these facts satisfy the elements of the generic offense."). Robles-Urrea *could* be found

---

[9]We disagree with Robles-Urrea's argument that *Aguila-Montes de Oca* should not apply retroactively to his case. Robles-Urrea entered his guilty plea in 2002, and his conviction became final in 2003. He therefore cannot have relied on our 2007 decision in *Navarro-Lopez*, which *Aguila-Montes de Oca* overruled. *Cf. Nunez-Reyes v. Holder*, 646 F.3d 684, 692-95 (9th Cir. 2011) (en banc) (citing reliance concerns in applying its rule only prospectively).

to have been convicted of a crime involving moral turpitude even though the statute of his conviction lacks baseness or depravity as an element, so long as the particular facts of *his* conviction, as reflected by the limited record of conviction, were base or depraved.

**[10]** The only question that remains is whether we must remand for the agency to conduct the modified categorical analysis. We have severe doubts as to the merits of each of the government's arguments as to why the agency could conclude that, even if misprision of a felony is not categorically a crime involving moral turpitude, Robles-Urrea's conviction was for a morally turpitudinous crime. Nonetheless, we recognize that the BIA is entitled to conduct the analysis in the first instance. *See Ventura*, 537 U.S. at 16 ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). We therefore remand so that it may do so.

## IV

Because the BIA impermissibly interpreted the INA in holding that misprision of a felony is categorically a crime involving moral turpitude, we grant Robles-Urrea's second petition for review, we deny the first as moot, and we remand for the agency to apply the modified categorical approach. On remand, the BIA may also consider whether Robles-Urrea is removable under 8 U.S.C. § 1182(a)(2)(C)(i), as an alien who "has been an illicit trafficker in any controlled substance," and whether he may be entitled to any form of relief from removal. If it concludes that he is removable under § 1182(a)(2)(C)(i) and not entitled to relief, it need not reach the question whether his conviction was for a crime involving moral turpitude.

**No. 06-71935: DISMISSED AS MOOT.**

**No. 06-74826: GRANTED and REMANDED.**